UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ASHLEY JADE CARTER

**Plaintiff,**

vs.

**SCOTTY RHODEN**, in his official capacity as a Baker County Sheriff, **BAKER COUNTY SHERIFF'S OFFICE**, a government entity, and **RANDY DAVIS**, in his capacity as Baker County Sheriff Deputy.

Defendants.
_____/

Case Number: _____

*Jury Trial Demanded Under Fed. R. Civ. P. 38(b)*

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, Ashley Jade Carter, by and through her attorney, hereby files this Complaint against the Defendants seeking damages and alleges as follows:

### INTRODUCTION

1. This cause of action arises out of an incident that occurred on November 13, 2019, when Plaintiff Ashley Jade Carter was sexually assaulted and abused while in the Defendants' custody.

2. This cause of action is for monetary damages and brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's

1

established constitutional rights as secured by the Fourth and Eighth Amendments to the United States Constitution against (1) Defendant Randy Davis ("Davis"), in his capacity as a duly-certified law enforcement officer employed by Baker County Sheriff's Office for violations of Ms. Carter's rights to due process, be free from unreasonable search and seizure, and not being subject to cruel and unusual punishment; (2) against Defendant Scotty Rhoden ("Rhoden"), in his official capacity as Baker County Sheriff, and Defendant Baker County Sheriff's Office ("BCSO") for unconstitutional policies, customs, and/or practices or lack thereof; and (3) against Defendant Scotty Rhoden for battery under Florida law.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1983, 1988.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Middle District of Florida. Additionally, upon information and belief, all the parties reside in this Judicial District.

## PARTIES

5. At all times relevant, Ms. Carter is a citizen of the United States and the city of Glen St. Mary, Baker County, Florida.

6. Defendant Randy Davis was, at all times relevant, a duly-certified member of BCSO, employed as Sheriff deputy at BCSO, acting under the color of state law and within the scope of his employment.

7. At all times material, Defendant Scotty Rhoden, in his official capacity as Sheriff of the County of Baker, Florida, was responsible for the supervision, training, instruction, discipline, control, and conduct of BCSO's employees and made policy for BCSO with respect to seizures, searches, arrests, holding and transporting detainees, and use of force.

8. At all times material, Defendant Rhoden had the power, right, authority, and duty to train and control his officers, agents, and employees to conform to the Constitution of the United States and to ensure that all orders, rules, instructions, and regulations promulgated for BCSO were consistent with the Constitution of the United States.

9. Defendant Baker County Sheriff's Office is and was, at all times material, a government agency, providing a vehicle through which its officers and office fulfill its policing functions for the County of Baker.

10. All conditions to this action have been satisfied, have occurred, or have otherwise been waived.

## Factual Allegations

### A. Ashley Jade Carter Was Sexually Assaulted/Abused While in Custody of Baker County Sheriff's Office

11. On the morning of November 13, 2019, Ms. Carter wanted to turn herself in for violations of probationary terms and asked her mother to drive her to Baker County Detention Center ("Detention Center").

12. Upon arrival, Ms. Carter was informed by the Detention Center personnel that no one was able to book her, and she must find a Sheriff to turn herself in. Ms. Carter was further advised that the sheriffs often gather in front of Baker County Courthouse, located less than two (2) miles south of the Detention Center.

13. Ms. Carter and her mother got back into their car and quickly found Defendant Randy Davis in his marked patrol vehicle in front of a Shell Gas Station, located across the street from the courthouse.

14. At all times material, Defendant Davis was in BCSO uniform with a badge of authority and armed with BCSO issued handgun. Davis also had in his possession an equipped patrol vehicle marked "Baker County Sheriff."

15. After a short discussion, Ms. Carter's mother left her with Defendant Davis and drove off.

16. Defendant Davis placed Ms. Carter in the back of his marked patrol vehicle and radioed dispatch, requesting another officer to transport Ms. Carter to the Detention Center because his vehicle was not equipped with a cage for transportation of detainees, and arrestees, or the like.

17. After waiting for a short moment, Defendant Davis advised Ms. Carter that he would rather transfer her to the detention center himself than wait for another officer.

18. At all times material, Defendant Davis did not read Ms. Carter her Miranda Rights.

19. At all times material, Ms. Carter was a detainee/arrestee, in custody of the Baker County Sheriff's Office and not free to leave.

20. Instead of taking Ms. Carter to the detention center and booking her, Defendant Davis took Ms. Carter to a nearby parking lot to have a conversation with her.

21. Defendant Davis started his conversation with Ms. Carter by showering her with many compliments, especially her beauty and tongue ring. He then talked about himself and his connections with all the people in their small town, including Ms. Carter's family. Once Defendant Davis got Ms. Carter to open up and talk about her situation, he shifted the subject of their conversation to his sexual fantasies, including the desire of having oral sex with someone with a tongue ring.

22. Defendant Davis expressly advised Ms. Carter that, having the authority and power of a deputy sheriff of BCSO, he could write a letter of recommendation to get Ms. Carter out of jail immediately and would need to get to his home office to draft such letter.

23. Defendant Davis ordered Ms. Carter to lie down in the back seat and drove directly to his residence, located approximately eighteen (18) miles south of the Detention Center.

24. When they arrived, Defendant Davis instructed Ms. Carter to leave her cell phone in the patrol vehicle. He then took Ms. Carter inside his house through the back door.

25. Once inside the house, Defendant Davis told Ms. Carter to sit and wait in the living room and quickly disappeared behind a door. When Defendant Davis returned, he demanded that Ms. Carter needed to give him "a blow job" if she wanted his get out of jail letter. He then walked into another room leaving Ms. Carter in shock and frozen in her chair.

26. Moments later, Defendant Davis instructed Ms. Carter to come to the room that he was in, which appeared to be a bedroom. At that time, Defendant Davis had already removed his pants and underwear.

27. Defendant Davis directed Ms. Carter to sit in front of him and proceeded to penetrate his penis into Ms. Carter's mouth. He placed his hands on the back of Ms. Carter's head and praised that she was "a good girl."

28. At all times material, Defendant Davis used his position and authority to intimidate Ms. Cater into compliance and to carry out the sex act he demanded.

29. Defendant Davis has been charged and convicted of battery under state law.

### B. Baker County Sheriff's Office's SmartCop Solutions

30. At all times material, BCSO was equipped with SmartCop Solutions, software programs that are widely used by government agencies across the United States, including but not limited to sheriff's offices, police departments, highway and state agencies, law enforcement agencies, correctional facilities, and public safety agencies, to ensure public safety and provide real-time information for law enforcement officers, dispatchers, and their supervisors.

31. SmartCop provides, among other things, location and mapping of assigned and unassigned officers, allowing administrators and supervisors to quickly evaluate personnel effectiveness.

32. SmartCop also provides access to real-time locations of on-duty officers with integrated mapping and coordinates, to quickly view unit status and locate a unit on the map.

33. SmartCop features the Automatic Vehicle Location systems, allowing Dispatchers and First Responders to quickly assess the location and status of every on-duty officer.

34. At all times material, BCSO had the capabilities to monitor, track, locate, and communicate with all their officers, whether on duty or off duty.

35. At all times material, BCSO had the capabilities to assure public safety through their diligence work.

36. At all times material, BCSO knew which patrol vehicle was assigned to Defendant Davis and had the capabilities to monitor, track, and locate it.

### Count I: 42 U.S.C. § 1983 – UNREASONABLE SEARCH AND SEIZURE
**Against Defendant Davis**

37. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein and further alleges:

38. The conduct of Defendant Davis, a duly-certified officer of BCSO, constituted unreasonable search and seizure of Plaintiff's person and in violation of the Fourth Amendment of the United States Constitution and established law.

39. At all times material, Defendant Davis was on duty and clothed with the authority of a law enforcement officer employed by Baker County Sheriff's Office.

40. At all times material, Defendant Davis was acting under the color of state law and within the scope of his employment.

41. Any reasonable officer would have known that taking a detainee/arrestee in their private home for their sexual gratification through coercion, physical force, or a show of authority is a violation of the Unreasonable Search and Seizure clause of the Fourth Amendment.

42. As a direct and proximate result of the Defendant Davis' acts or omissions described herein, Ms. Carter suffered emotional and mental harm, during and after the event, including but not limited to fear, humiliation, mental anguish, and any such emotional and mental harm that Ms. Carter is reasonably certain to experience in the future.

### Count II: 42 U.S.C. § 1983 – DUE PROCESS
### Against Defendant Davis

43. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein and further alleges:

44. The conduct of Defendant Davis, as a deputy sheriff, deprived Plaintiff of her constitutional right to intimate bodily integrity without due process of law and in violation of the Fourth Amendment of the United States Constitution and established law.

45. Any reasonable officer would have known that forcing non-consensual sexual contact upon a detainee/arrestee is a violation of the Due Process Clause of the United States Constitution.

46. As a direct and proximate result of the Defendant's conduct, Ms. Carter suffered emotional and mental harm, during and after the event, including but not limited to fear, humiliation, and mental anguish, and any such emotional and mental harm that Ms. Carter is reasonably certain to experience in the future.

### Count III: 42 U.S.C. § 1983 – CRUEL AND UNUSUAL PUNISHMENT
### Against Defendant Davis

47. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein and further alleges:

48. The conduct of Defendant Davis constituted an infliction of cruel and unusual punishment on Ms. Carter and in violation of the Eighth Amendment of the United States Constitution and established law.

49. Defendant Davis, a duly-certified deputy sheriff, carried himself as a representative of the BCSO and made Ms. Carter believe that he had been vested with the authority to determine and impose punishments on detainees or arrestees.

50. At all times material, Defendant Davis, acting under color of state law, caused Ms. Carter to believe that giving oral sex was a form of punishment, instead of prison time, for her probationary violation.

51. As a direct and proximate result of the Defendant Davis' conduct described herein, Ms. Carter suffered emotional and mental harm, during and after the

event, including but not limited to fear, humiliation, and mental anguish, and any such emotional and mental harm that Ms. Carter is reasonably certain to experience in the future.

**Count IV: FAILURE TO INTERVENE**
**Against Defendants Rhoden and Baker County Sheriff's Office**

52. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein and further alleges:

53. Plaintiff contends that Defendant Davis, while on duty, violated Plaintiff's constitutional right as stated above and Defendants Rhoden and BCSO should be liable for such violations because Defendants Rhoden and BCSO failed to intervene.

54. Defendant Davis, while in the scope of his employment, violated Ms. Carter's constitutional rights.

55. At all times material, Defendants Rhoden and BCSO, knew or should have known that Ms. Carter was in BCSO's custody.

56. Over the past decade, at least eighty-five thousand (85,000) law enforcement officers have been investigated or disciplined for misconduct, including but not limited to, using excessive force and/or allegations of rape, child molestation,

and other sexual misconduct.[1] At all times material, Defendants Rhoden and BCSO were well aware that the risks of constitutional rights violations existed.

57. At all times material, Defendants Rhoden and BCSO had a duty to intervene, preventing their officers from committing constitutional rights violations and/or protecting citizens from foreseeable harm.

58. Defendants Rhoden and BCSO had full access to the SmartCop System, which was equipped with state-of-the-art technology and empowered their department with tremendous capabilities of, including but not limited to, instant mapping, tracking, locating, and communicating with their officers.

59. Defendants Rhoden and BCSO had ample opportunities to intervene and could have stopped Defendant Davis from violating Ms. Carter's constitutional rights.

60. Defendants Rhoden and BCSO's failure to intervene aided Defendant Davis in accomplishing the aforementioned violations of Ms. Carter's constitutional rights.

61. As a direct and proximate result of the Defendants' acts or omissions described herein, Ms. Carter suffered emotional and mental harm, during and after the event, including but not limited to fear, humiliation, mental anguish, and any such

---

[1] John Kelly & Mark Nichols, Tarnished Brass, USA TODAY (Apr. 24, 2019), https://www.usatoday.com/in-depth/news/investigations/2019/04/24/usa-today-revealing-misconduct-records-police-cops/3223984002/ (reported that USA Today discovered over 200,000 allegations of police misconduct, including more than 85,000 officers in the last decade).

emotional and mental harm that Ms. Carter is reasonably certain to experience in the future.

### Count V: FAILURE TO TRAIN, MODIFY OR ADOPT A NEEDED POLICY
### Against Defendants Rhoden and Baker County Sheriff's Office

62. Plaintiff incorporates and re-alleges all preceding paragraph as though fully pleaded herein and further alleges:

63. Defendant Davis, while in the scope of his employment, violated Ms. Carter's constitutional rights, and Defendants Rhoden and BCSO should be liable for such violations because they failed to adequately train, properly modify, or timely adopt a needed policy.

64. At all times material, the Defendants Rhoden and BCSO were aware that deprivation of the constitutional rights of citizens was likely to result from failure to adequately train, modify, or adopt a needed policy to timely identify, detect, investigate and report suspicious conducts and/or activities of their officers.

65. Defendants Rhoden and BCSO, consciously and deliberately disregarded the risk of potential violations of constitutional rights by not adequately training, modifying, or adopting a needed policy.

66. Defendants Rhoden and BCSO's failure to adequately train, modify, or adopt a new policy constituted official policies, practices, and customs of BCSO.

67. Defendants Rhoden and BCSO's failure to adequately train, modify, or adopt a needed policy was the cause of and the moving force behind the violations of Ms. Carter's constitutional rights.

68. As a direct and proximate result of the Defendants' acts or omissions described herein, Ms. Carter suffered emotional and mental harm, during and after the event, including but not limited to fear, humiliation, mental anguish, and any such emotional and mental harm that Ms. Carter is reasonably certain to experience in the future.

### Count VI: STATE LAW CLAIM: BATTERY
### Against Defendant Rhoden

69. Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein and further alleges:

70. Plaintiff has satisfied all conditions precedent to bringing this action as required pursuant to § 768.28, Fla. Sta. (2019).

71. Defendant Davis, a duly-certified member of BCSO, actually and intentionally made offensive contact with Ms. Carter's body without legal justification.

72. Defendant Rhoden, having given his officers the authority to use force against Ms. Carter, is liable for abuse of such authority.

73. As a result of Defendant Davis' battery and abuse of his authority, Ms. Carter suffered damages, including but not limited to, severe pain and suffering, physical injuries, mental anguish, and emotional distress.

### Prayer for Relief

**WHEREFORE**, Plaintiff demands:

a) Actual Damages against Defendants in the amount to be determined by the jury;

b) Costs to bring this action and reasonable attorney's fee under U.S.C. § 1988;

c) Punitive damages under federal common law provided by *Smith v. Wade*, 461 U.S. 30 (1983); and

d) Such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial as to all issues so triable.

Respectfully Submitted this 4th day of May, 2022.

**David A. Taylor, P.A.**

/s/ David A. Taylor
**David A. Taylor, Esq**
Florida Bar Number: 127000
233 East Bay Street, Ste. 1020
Jacksonville, FL 32202
davidtaylor@1stcounsel.com
Phone: 904-356-8684
Fax: 904-598-0905
Attorney for Plaintiff